UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NOBLE MASERU,
Plaintiff,

vs.

UNIVERSITY OF CINCINNATI,
Defendant.

Case No. 1:18-cv-106
Dlott, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Noble Maseru brings this action against defendant University of Cincinnati, alleging discrimination on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. This matter is before the Court on the University's motion to dismiss (Doc. 7)[1] and the University's motion for judgment on the pleadings (Doc. 10), plaintiff's response in opposition (Doc. 14), and the University's reply memorandum (Doc. 16).

**I. Allegations in the Amended Complaint**

In October 2016, plaintiff, an African-American male with over 30 years of experience in the public health field, applied for a position at the University of Cincinnati as an Associate Professor in Health Policy Management. (Amended Complaint, Doc. 8 at ¶¶ 6-7). On October 19, 2016, plaintiff met with Dr. Ying, the Director of the Master of Public Health Program to discuss the available position. (*Id.* at ¶ 8). Dr. Ying informed plaintiff that he would "move things forward." (*Id.*). On November 21, 2016, plaintiff emailed Dr. Ying about meeting with the Search Committee for the position. (*Id.* at ¶ 9). On or about December 2, 2016, Dr. Ying informed plaintiff that the Search Committee decided not to pursue his candidacy. (*Id.* at ¶ 10).

---

[1] After the University filed its motion to dismiss on May 14, 2018, plaintiff filed an amended complaint on June 4, 2018. Accordingly, the University's motion to dismiss (Doc. 7) should be denied as moot.

Plaintiff alleges that the University "was aware of [his] race and gender" and instead hired a Caucasian male for the position despite plaintiff's qualifications and experience. (*Id.* at ¶¶ 11-13).

On September 26, 2017, plaintiff completed an intake questionnaire for the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 14). Plaintiff delivered the completed form to the EEOC's office in Pittsburgh, Pennsylvania on September 27, 2017. (*Id.* at ¶ 15). Plaintiff's questionnaire was then sent to the EEOC's office in Cincinnati, which received the questionnaire on October 10, 2017. (*Id.* at ¶ 16). On October 13, 2017, the Cincinnati EEOC office mailed plaintiff a letter advising him that his complaint met the minimum requirements to constitute a charge of discrimination. (*Id.* at ¶ 17). That same day, the Cincinnati EEOC office mailed the University a notice that plaintiff had filed a charge of discrimination and that the EEOC would serve a perfected charge once it was received by plaintiff. (*Id.* at ¶ 18). On October 27, 2017, the Cincinnati EEOC office mailed plaintiff a letter and an EEOC Form 5, Charge of Discrimination, for his review and signature. (*Id.* at ¶ 19). Plaintiff signed the charge of discrimination and returned it to the Cincinnati EEOC office on November 1, 2017. (*Id.* at ¶ 20). The Cincinnati EEOC office received the charge of discrimination on November 14, 2017. (*Id.*). On November 17, 2017, the EEOC issued a Notice of Right to Sue. (*Id.* at 21).

## II. Motion for Judgment on the Pleadings (Doc. 10)

### A. Standard

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of

2

the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted)). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**B. The Parties' Arguments**

The University argues that plaintiff's failure to timely file his charge of discrimination with the EEOC requires dismissal of his lawsuit. (Doc. 10 at 6). The University contends that plaintiff filed his charge with the EEOC outside of the 180-day deadline from the date of the alleged discriminatory action. (*Id.*) (citing 42 U.S.C. § 2000e-5(e)). The University argues that plaintiff failed to indicate dual filing on the EEOC Form 5, charge of discrimination, and he is therefore subject to the 180-day deadline to file his charge. (*Id.* at 6-7) (citing *Clemons v. Metro.*

3

*Gov't of Nashville & Davidson County*, 664 F. App'x 544, 546-47 (6th Cir. 2016)). The University argues that plaintiff expressly stated that his charge had not been dual filed with the Ohio Civil Rights Commission ("OCRC"). (*Id.* at 7). Since plaintiff alleges that the last date of alleged discrimination took place on December 2, 2016, the University contends the delivery of his intake questionnaire to the Pittsburgh EEOC Office on September 27, 2017 was outside the 180-day window to file. (*Id.*). The University also argues that plaintiff has failed to state a claim for relief for sex discrimination because his amended complaint or EEOC charge has failed to indicate why he believes he was discriminated against on the basis of sex. (*Id.* at 8). The University states that plaintiff alleges he is a male and that the successful applicant for the position was also a male and plaintiff has not indicated that any similarly-situated female applicants were treated differently. (*Id.*).

In response, plaintiff argues that his EEOC charge is timely because he is entitled to the 300-day filing deadline provided by 42 U.S.C. § 2000e-5(e)(1). (Doc. 14 at 5). Plaintiff argues that Ohio is a "deferral state" and Title VII permits the EEOC and a state Fair Employment Practice Agency ("FEPA") such as the OCRC to enter into worksharing agreements to simplify the filing and processing of discrimination charges. (*Id.* at 6). Plaintiff attaches the fiscal year 2017 worksharing agreement between the OCRC and the EEOC, Indianapolis District Office, to his memorandum in opposition. (Doc. 14-1 at 6-11). Plaintiff contends that "[i]n light of the Worksharing Agreement, the filing of [his] charge with the EEOC was sufficient to initiate proceedings with the [OCRC]." (Doc. 14 at 7). Plaintiff also argues that his request that his EEOC charge not be "dual filed" with the OCRC does not overcome the language of the worksharing agreement. (*Id.* at 7-8) (citing *Welker v. Goodyear Tire Co.*, No. 96-3045, 1997 WL 369450 (6th Cir. July 1, 1997); *Theodore v. Bridgestone Americas, LLC.*, No. 5:15-cv-

4

00698, 2015 WL 4664212, at *3 (N.D. Ohio Aug. 6, 2015)). Plaintiff contends that he has stated a plausible discrimination claim based on his status as an African American male. (*Id.* at 9). Plaintiff argues that "[g]iven [his] extensive qualifications and experience, it is plausible that Defendant may have eliminated [him] early in the process because he is an African American male." (*Id.* at 10). Plaintiff cites *Lam v. Univ. of Hawaii*, 40 F.3d 1551 (9th Cir. 1994), in support of his position that "the ultimate hiring of a male for the position at issue in this case does not necessarily mean that Plaintiff was not the victim of discrimination based on the combination of his race and sex." (*Id.* at 11-12).

In reply, the University contends that plaintiff expressly stated in his charge that it was not filed with the OCRC and he has failed to cite any applicable worksharing agreement in the record. (Doc. 16 at 2) (citing *Berger v. Medina County Ohio Bd. of County Comm'rs*, 295 F. App'x 42, 44 (6th Cir. 2008)). The University argues that the worksharing agreement between the Indianapolis District Office and OCRC that plaintiff attached to his memorandum in opposition is insufficient. (*Id.*). Assuming, arguendo, that the 300-day deadline applies, the University asserts that "[t]he records [plaintiff] produced showed that the EEOC in Cincinnati did not get his Intake Questionnaire until October 10, 2017, past the 300-day deadline." (*Id.* at 3). The University maintains that plaintiff has failed to state a plausible sex discrimination claim. (*Id.* at 4-6).

### C. The University's motion for judgment on the pleadings should be denied.

#### a. Plaintiff's EEOC charge is timely.

To bring a Title VII claim, a plaintiff must timely file a discrimination charge with the EEOC. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999). Title VII provides that the applicable statute of limitations begins to run from the date of

5

"the alleged unlawful employment practice. . . ." 42 U.S.C. § 2000e-5(e)(1). The Sixth Circuit has explained Title VII's dual statute of limitations as follows:

> Usually, if the alleged discrimination occurred more than 180 prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred. However, if the alleged unlawful practice occurs in a "deferral state," in this case Ohio, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file suit within 300 days of the alleged discriminatory act.

*Alexander*, 177 F.3d at 407 (citing 42 U.S.C. § 2000e-5(e)). This Court has determined that because Ohio is a deferral jurisdiction, a plaintiff has 300 days to file a discrimination charge with the EEOC as a matter of law. *See Winkelmann v. Big Lots Stores, Inc.*, No. 1:08-cv-00419, 2009 WL 3788673, at *6 and n. 1 (S.D. Ohio Nov. 10, 2009) (Spiegel, J.). "A plaintiff can demonstrate that [he] qualified for the 300-day deadline even if [he] did not file with the appropriate state agency by showing the existence of a worksharing agreement between the EEOC and the state agency." *Stewart v. Iams Co.*, No. 1:05-cv-390, 2010 WL 1258108, at *2 (S.D. Ohio Mar. 22, 2010). *See also Berger*, 295 F. App'x at 45 (generally, a worksharing agreement between the EEOC and an appropriate state employment agency qualifies a Title VII plaintiff for the 300-day limitations period).

Here, unlike in *Berger*, which the University has cited in its reply memorandum, plaintiff has alleged in his briefing that Ohio is a deferral state and that a worksharing agreement exists between the EEOC and OCRC. (Doc. 14 at 6). *See Winklemann*, 2009 WL 3788673, at *6 (distinguishing *Berger*, where the Sixth Circuit affirmed dismissal of the complaint based on the plaintiff's failure to allege the existence of a work agreement between the Ohio Civil Rights Commission and the EEOC, because the plaintiff before the Court raised the argument that Ohio is a deferral state and the 300-day limitations period applied). Plaintiff has also attached the 2017 worksharing agreement between the Indianapolis District Office of the EEOC and the

6

OCRC. (Doc. 14-1).[2] The worksharing agreement is "designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State and Federal laws." (Doc. 14-1 at 6). Regarding the filing of charges of discrimination, the worksharing agreement provides:

> A. In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. The EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purposes of Section 706 (c) and (e)(1) of Title VII. . . .

(Worksharing agreement, Doc. 14-1 at 7, II A). Based on this agreement, plaintiff is entitled to the 300-day filing deadline and has properly alleged that his EEOC charge was timely. Plaintiff alleges that the alleged unlawful employment practice culminated on December 2, 2016, the date that Dr. Ling informed him that the Search Committee decided not to pursue his candidacy for the Associate Professor position. (Amended Complaint, Doc. 8 at ¶ 10). Thus, plaintiff had 300 days, or until September 28, 2017, to file his charge of discrimination with the EEOC. Plaintiff completed an intake questionnaire on September 26, 2017 and delivered the questionnaire to the Pittsburgh EEOC office on September 27, 2017, which marked the questionnaire with a date stamp. (*Id.* at ¶¶ 14-15; Doc. 8-1).

The Court deems the intake questionnaire completed by plaintiff on September 26, 2017 to be a "charge of discrimination" because it contains the information required by the agency's regulations and can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and

---

[2] Although a motion for judgment on the pleadings rests primarily upon the allegations in the complaint, the Court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ]." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). Accordingly, the Court will consider the worksharing agreement attached to plaintiff's memorandum in opposition to the motion for judgment on the pleadings.

7

employee." *Monnheimer v. Nielsen*, No. 1:08-cv-356, 2008 WL 5333808, at *3 (S.D. Ohio Dec. 19, 2008) (quoting *Federal Express Corp v. Holowecki*, 552 U.S. 389, 402 (2008)). Here, plaintiff's intake questionnaire contained the regulatory information set forth in 29 C.F.R. § 1601.12, including the name, address, and telephone number of plaintiff and the defendant; allegations that he was the victim of discrimination based on age, race, and sex; a clear statement of the facts, including pertinent dates; the number of employees who worked for the defendant; and a statement disclosing that proceedings involving the alleged unlawful employment practice had not been commenced before a state or local agency. (Doc. 8-1). *See id.* (extending the *Holowecki* precedent to the Title VII context and holding that the intake questionnaire completed by plaintiff constituted a timely charge of discrimination because it contained the requisite regulatory information). Accordingly, plaintiff's intake questionnaire filed on September 27, 2017—day 299 of the timeline—is timely.

The University argues that plaintiff does not enjoy the benefit of the 300-day filing deadline because on the charge of discrimination, he failed to checkmark the box indicating that he was dual filing with the state agency (the "FEPA" box) and explicitly noted that his charge "has not been dual filed with the Ohio Civil Rights Commission." (Doc. 10 at 6-7) (citing Charge of Discrimination, Doc. 8-5 at 2). In *Clemons*, which the University cites in support of its argument, the Sixth Circuit upheld the District Court's judgment that a 180-day limitations period applied and plaintiff did not timely file his EEOC charge because he "made no showing that he initiated proceedings with a state or local agency by any mechanism." 664 F. App'x at 546-47. However, the Court did not address whether an applicable worksharing agreement between the EEOC and a Tennessee state agency demonstrated that the plaintiff qualified for the 300-day filing deadline. The Court finds the reasoning in *Theodore*, an age discrimination case

8

from the Northern District of Ohio cited by plaintiff, to be persuasive. 2015 WL 4664212, at *3-4. Similar to the instant case, in *Theodore*, the plaintiff expressly wrote at the top of his charge of discrimination that he did not want his charge to be jointly filed with the OCRC and did not checkmark the box on the form indicating that he wanted the charges to be presented to the OCRC. *Id.* at *1. The Court noted that "the mere failure to check a box on the charge form indicating that dual filing is desired is [not] enough to avoid triggering the extended 300 day statute of limitations period." *Id.* at *3. The Court also noted that plaintiff's "personal direction" (i.e. expressly writing that he did not want his charge to be dual filed) was "insufficient to override the EEOC and Ohio Commission's ordinary work-sharing procedure." *Id.* at *4. *See also Welker*, 1997 WL 369450, at *2 ("In deferral states, such as Ohio, with worksharing agreements between the EEOC and the state agency, a filing with the EEOC is automatically referred to the state agency and is deemed received by the other."); Worksharing agreement, Doc. 14-1 at 7 ("The EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA. . . ."). Here, in light of the worksharing agreement between the EEOC and the OCRC, the Court concludes that plaintiff's failure to checkmark the FEPA box and plaintiff's express notation that the charge had not been dual filed with the OCRC does not limit the applicability of the 300-day filing deadline.

The University argues in its reply brief that plaintiff's citation to the worksharing agreement between the OCRC and the Indianapolis EEOC District Office is insufficient because plaintiff initially filed his intake questionnaire with the Pittsburgh office of the EEOC, which is covered by the Philadelphia EEOC District Office. (Doc. 16 at 2). The University argues: "[t]his contract expressly designates an individual from the Indianapolis District Office and an individual from OCRC as points of contact and is signed by the Director of the EEOC

Indianapolis District Office and the OCRC Executive Director." (*Id.*). In this regard, the University argues that plaintiff must supply an applicable worksharing agreement that would cover the Pittsburgh Office in the Philadelphia District with the OCRC. (*Id.*).

The University has provided no legal authority in support of this argument. The University's argument is contrary to the purpose of the worksharing agreement between the Indianapolis District EEOC and OCRC, which encourages an efficient procedure for obtaining redress for discrimination under appropriate state and federal laws. (Worksharing agreement, Doc. 14-1 at 6, I B). The University's argument is also contrary to the language of the worksharing agreement, which provides that "[t]he EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA. . . ." (*Id.* at 7, II A). A broad reading of the worksharing agreement assumes that regardless of whether the Pittsburgh EEOC office initially received the charge (or in this case, the intake questionnaire), the *EEOC*—a single federal agency that operates through its field offices throughout the country—will *automatically initiate* proceedings with the OCRC. Thus, receipt by the EEOC field office in Pittsburgh is deemed receipt by the EEOC in Cincinnati. Moreover, given that the intake questionnaire was transferred to Cincinnati, the alleged discriminatory conduct occurred at the University of Cincinnati, and a potential investigation would inevitably occur in Ohio, it logically follows that the worksharing agreement between the EEOC's Indianapolis District and OCRC is sufficient to demonstrate that plaintiff qualifies for the 300-day filing deadline. Accordingly, the Court rejects the University's arguments and finds that plaintiff has timely filed a charge of discrimination within the 300-day filing deadline.

### b. Plaintiff has stated a claim for relief for intersectional sex and race discrimination.

To demonstrate a prima facie case of discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the job sought; (3) he experienced an adverse employment action; and (4) he was treated differently than similarly situated applicants outside the protected class. *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 568 (6th Cir. 2009) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008); *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004) (in turn citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)).

At the pleading stage, a plaintiff who asserts a federal employment discrimination claim is not required to plead facts establishing a prima facie case under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in order to state a claim for relief. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)). "The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. A plaintiff "need allege only (a) the statutory basis for [the] claims, and (b) the factual predicate of those claims, such that the defendants are 'apprise[d] . . . of the [] claims and the grounds upon which they rest.'" *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp.2d 863, 871 (S.D. Ohio 2013) (quoting *Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007)).

Plaintiff clarifies that his Title VII claim is based on a combination of race and sex discrimination. Plaintiff asserts that he "should be permitted to explore whether Defendant's refusal to allow him to even interview for the position resulted from bias based on the combination of his race and sex." (Doc. 14 at 12). "The Sixth Circuit has recognized the

11

viability of an intersectional race-and-sex discrimination claim under Title VII." *Coffman v. United States Steel Corp.*, 185 F. Supp.3d 977, 983 (E.D. Mich. 2016) (citing *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957-58 (6th Cir. 2014)). As the Sixth Circuit has stated:

> [R]ace and sex—are protected by Title VII. African American women are subjected to unique stereotypes that neither African American men nor white women must endure. *Cf. Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1562 (9th Cir. 1994) (discussing sex-and-race Title VII claim brought by Asian woman). And Title VII does not permit plaintiffs to fall between two stools when their claim rests on multiple protected grounds.

*Shazor*, 744 F.3d at 958. Although the case law on the issue of intersectional race and sex discrimination claims is sparse, a District Court in Wisconsin has explained the issue as follows:

> The EEOC characterizes this type of discrimination as "intersectional discrimination":
>
> Title VII prohibits discrimination not just because of one protected trait (e.g., race), but also because of the intersection of two or more protected bases (e.g., race and sex). For example, Title VII prohibits discrimination against African American women even if the employer does not discriminate against White women or African American men. Likewise, Title VII protects Asian American women from discrimination based on stereotypes and assumptions about them "even in the absence of discrimination against Asian American men or White women." The law also prohibits individuals from being subjected to discrimination because of the intersection of their race and a trait covered by another EEO statute e.g., race and disability, or race and age.
>
> EEOC Compliance Manual, Ch. 15, at http://www.eeoc.gov/policy/docs/race-color.html (last visited October 23, 2009).
>
> African-American men, like African-American women, may bring intersectional claims. *See Long v. AT & T Info. Sys., Inc.*, 733 F. Supp. 188 (S.D.N.Y. 1990). It is sometimes mistakenly thought that the black male experience represents a mere racial variation on the white male experience and that black men suffer from discrimination only because they are black. Conceptualizing separate over-lapping black and male categories has sometimes interfered with the recognition that certain distinctive features of being black *and* male serve as the target for discrimination. Jesse B. Semple, Note, *Invisible Man: Black & Male Under Title VII*, 104 Harv. L. Rev. 749, 751 (1990-91).

*Kimble v. Wisconsin Dep't of Workforce Dev.*, 690 F. Supp.2d 765, 770-71 (E.D. Wis. 2010). Here, plaintiff has adequately pled that he is an African American male who was qualified for the Associate Professor Position, he was denied the position, and the University instead hired a Caucasian male. Although the University ultimately hired a male for the position, plaintiff is not required to allege that someone in his majority male class was treated differently because under the intersectional theory, discrimination against an African American male can still exist even in the absence of discrimination against white males or African American females. *See Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1035 (5th Cir. 1980) (holding that district court erred in failing to consider plaintiff's claim of discrimination on the basis of both race and sex and erred in considering that an African American male was ultimately promoted for the position over the plaintiff, an African American female, because "discrimination against black females can exist even in the absence of discrimination against black men or white women."). *See also Lam*, 40 F.3d at 1562 ("when a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the basis of that *combination* of factors, not just whether it discriminates against people of the same race or of the same sex."). In light of the above principles, the Court concludes that plaintiff's discrimination claim based on an intersection of sex and race warrants further development beyond the pleading stage. The University's motion for judgment on the pleadings should be denied as to plaintiff's intersectional race and sex discrimination claim.

**III. Conclusion**

Based on the foregoing, it is **RECOMMENDED** that:

1. Defendant's motion to dismiss (Doc. 7) be **DENIED as MOOT**.

2. Defendant's motion for judgment on the pleadings (Doc. 10) be **DENIED**.

**IT IS SO RECOMMENDED.**

Date: 1/9/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

NOBLE MASERU,
    Plaintiff,

vs.

UNIVERSITY OF CINCINNATI,
    Defendant.

Case No: 1:18-cv-106
Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).